UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jeremy Mueller,

      Plaintiff,

v.                                                     Case No. 16-13586

Nexteer Automotive Corp.,                Sean F. Cox
                                                       United States District Court Judge

      Defendant.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff filed this action against his former employer, alleging that he was terminated in retaliation for having made a complaint under the federal Fair Labor Standards Act, 29 U.S.C. § 215 *et seq*. After the close of discovery, Defendant filed the instant Motion for Summary Judgment. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. As explained below, the Court shall GRANT the motion because the decision-maker's knowledge of the plaintiff's protected activity is an essential element of a prima facie retaliation claim and Plaintiff has failed to present either direct or circumstantial evidence that the decision-makers who decided to terminate his employment had knowledge of Plaintiff's verbal complaint made to others.

1

## BACKGROUND

Plaintiff Jeremy Mueller filed this action against his former employer, Defendant Nexteer Automotive Corp., asserting one claim – "Retaliation in Violation of the Fair Labor Standards Act, 29 U.S.C. § 215."

Following the close of discovery, Defendant filed a Motion for Summary Judgment. This Court's practice guidelines, which are expressly included in the Scheduling Order issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(D.E. No. 19 at 2-3).

In compliance with this Court's guidelines, in support of its Motion for Summary Judgment, Defendant filed a "Statement of Material Facts Not In Dispute" ("Def.'s Stmt.). In response to that submission, Plaintiff filed a "Counter-Statement of Disputed Facts" (Pl.'s Stmt.").

The following material facts are gleaned from the evidence submitted by the parties, viewed in the light most favorable to Plaintiff, the non-moving party. But the facts are largely undisputed.

Nexteer's U.S. Salaried Employee Handbook states: "Nexteer's principles include a commitment to promoting diversity, providing quality, ensuring health and safety, and preserving the environment"; "Nexteer applies a company-wide focus on quality, working toward a zero-defect goal in all products, processes and business services"; and "Nexteer is committed to protecting the health and safety of each Employee, visitor and contractor." (Def.'s & Pl.'s Stmt. at ¶ 1).

Plaintiff Jeremy Mueller began working in Nexteer's Automotive Prototype Plant as a contract employee through Dynamic Corporation in February 2013. In July 2014, Mueller applied for a position to work for Nexteer directly. Nexteer hired Mueller to work as a production group leader on the second shift, or B-shift, in August 2014. (Def.'s & Pl.'s Stmt. at ¶¶ 2-4). After Defendant hired Mueller as a production group leader, Defendant classified him as a salaried-exempt employee under the FLSA. (*Id.* at ¶ 5).

Mueller worked in Nexteer's Plant 6, and his immediate supervisor was B-shift General Foreman, Richard Weigl. As a B-shift production group leader, Mueller generally worked from 2:00 p.m. to 10:00 or 10:30 p.m. As a B-shift production group leader, Mueller supervised employees that worked on the production line. Mueller's job duties included ensuring that there were enough employees to cover the shift, making sure that the employees were filling out paperwork they were to complete, ensuring that employees had the proper supply and were running the proper parts, keeping management informed of developments and issues, and

3

"keeping a general overview of what was going on." (Def.'s & Pl.'s Stmt. at ¶¶ 6-9).

To ensure quality, Mueller was required to go over quality control instructions with employees and have them initial a document stating that Mueller went over the instructions with them.  Mueller was responsible for making sure that Nexteer's policies were followed both by himself and the others he supervised.  (Def.'s & Pl.'s Stmt. at ¶¶ 10-11)

Nexteer's U.S. Salaried Employee Handbook contains a cell phone policy that states, "[a]ny time a cell phone is used in an industrial environment, there is the danger that it will cause the user to become distracted and, therefore, be at risk for injury or accident."  Under Nexteer's cell phone policy, cell phones are prohibited within manufacturing areas, unless authorized by Nexteer management. Violation of the cell phone policy may result in termination of employment.  Mueller understood that it was a violation of Nexteer policy for employees who were working on the line to be using cell phones. (Def.'s & Pl.'s Stmt. at ¶¶ 12-15).

Mueller also understood that failing to go over quality control instructions with Nexteer employees as required is a violation of Nexteer policy that can result in termination of employment. (Def.'s & Pl.'s Stmt. at ¶ 16).

Nexteer's U.S. Salaried Employee Handbook provides that salaried exempt employees "may be paid straight time or time and one-half for overtime worked."  Payment of overtime to salaried exempt employees is discretionary under Nexteer policy. (Def.'s & Pl.'s Stmt. at ¶¶ 17-18).

During Mueller's employment at Nexteer, the B-shift supervisors included Mueller, James Featherston, Scott Thompson, and Choy Bland.  During Mueller's employment at Nexteer, the B-shift supervisors were typically paid overtime after 40 regular hours at time and

4

one-half, and double time on Sundays and holidays. (Def.'s & Pl.'s Stmt. at ¶¶ 19-20).

On January 4, 2016, Mueller's supervisor, Richard Weigl, informed the B-shift supervisors that for a one month period of January 2016, Mueller and his fellow B-shift supervisors would not be paid overtime, but would instead earn compensatory time off, or "comp time," for time worked in excess of 40 hours a week (the "January 2016 comp time policy"). The January 2016 comp time policy was implemented after Nexteer experienced a drop in customer volumes.  The January 2016 comp time policy was a way to manage costs and avoid having to lay employees off until volumes came back up. (Def.'s & Pl.'s Stmt. at ¶¶ 21-23).

Mueller and the other B-shift supervisors were to turn in a time sheet that would be submitted to payroll showing 40 hours a week worked, and track their hours worked in excess of 40 hours as comp time on a separate time sheet.  James Featherston created a Google document to allow the B-shift supervisors to log and track their comp time. (Def.'s & Pl.'s Stmt. at ¶¶ 24-25).

Mueller complained about the January 2016 comp time policy to the Plant 6 Engineering and Maintenance Manager, Jon Bellinger, stating that he would prefer to be paid overtime. Mueller alleges that he complained about the January 2016 comp time policy to his direct supervisor, Richard Weigl, and A-shift General Foreman, John Dorr.  Mueller did not complain about the January 2016 comp time policy to anyone other than Bellinger, Weigl, and Dorr. (Def.'s & Pl.'s Stmt. at ¶¶ 26-28).

In general, Mueller complained that he was not in agreement with receiving more vacation time instead of being paid overtime.  Mueller alleges that he complained that the January 2016 comp time policy did not "make sense," that it was "unfair," and that it was not

5

something he had "agreed to."  Bellinger explained to Mueller that the January 2016 comp time policy was what was best for the whole team because it meant no one had to be laid off.  (Def.'s & Pl.'s Stmt. at ¶¶ 29-31).

Before the January 2016 comp time policy was implemented, Nexteer had hired an investigative company to perform an undercover investigation at the plant.  That investigation occurred over a few months.  (Def.'s & Pl.'s Stmt. at ¶¶ 32-33).

In weeks 14-18 of the investigation, the undercover agent worked in Plant 6 on B-shift. While the investigation was ongoing, no one in Plant 6 knew that an undercover agent had been placed in Plant 6, including Mueller, Bellinger, Weigl and Dorr.   (Def.'s & Pl.'s Stmt. at ¶¶ 34 & 36).

The agent submitted a written report to Nexteer.  (D.E. No. 11-3 at Pg ID 116).  In it, the agent reported to Nexteer that Mueller told employees that they could use their cell phones while they were working on the line or on the floor as long as no one in upper management saw them. The agent also reported that Mueller told employees to sign a document related to quality control indicating that he went over the document with the employees when he had not.   (*Id*. at Pg ID 135-36).  The report stated that when the agent asked Mueller why he was signing the document, Mueller responded it was "for some quality control bullshit." (*Id*. at Pg ID).

After the undercover investigation concluded, Nexteer's Human Resources Business Partners reviewed the agent's report. (Def.'s & Pl.'s Stmt. at ¶ 40).

Based on the information discovered during the undercover investigation, a group of Nexteer human resources professionals decided to terminate Mueller's employment, among other employees.  These decision-makers included the Human Resources Business Partners for

various plants within Nexteer impacted by the investigation – Brenda Page (Plants 1, 6, and 7), Casey Jobson (Plants 1, 6, and 7), Amy Sherbino (Plant 3), Denny Getgood (Plant 4), and Traci Koski (Plant 5); the Director of Labor Relations, Dereon Pruitt; and the Director of North America Human Resources, Tony Behrman. (Def.'s & Pl.'s Stmt. at ¶¶ 41-42).

In reaching their decision, these individuals discussed only the findings of the investigative report; they did not meet with any of Mueller's coworkers or discuss the report with them.  Mueller did not have any discussions regarding the January 2016 comp time policy with Brenda Page, Casey Jobson, Amy Sherbino, Denny Getgood, Traci Koski, Dereon Pruitt, or Tony Behrman.  (Def.'s & Pl.'s Stmt. at ¶¶ 43-44).

Mueller was not the only worker whose employment was terminated as a result of the undercover investigation; several other employees, including an employee who was found to have falsified a document, were also terminated. Weigl, Dorr, and Bellinger were not involved in the decision to terminate Mueller's employment.  Weigl, Dorr, and Bellinger did not know who made the decision to terminate Mueller's employment. (Def.'s & Pl.'s Stmt. at ¶¶ 45-47).

After Nexteer decided to terminate Mueller's employment, Brenda Page met with Mueller to inform him of the decision.  Page informed Mueller that there was an undercover agent in the department who had reported that Mueller had allowed him to use his cell phone while the agent worked at Nexteer, and that Mueller had stated that a quality alert was "bullshit."

(Def.'s & Pl.'s Stmt. at ¶¶ 48-49).

Page informed Mueller that based on the investigator's findings, Mueller's employment with Nexteer was being terminated. Nexteer terminated Mueller's employment on February 2, 2016.  (Def.'s & Pl.'s Stmt. at ¶¶ 50-51).

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002). "The court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). "This is so because the nonmovant, in response to a properly made and supported motion for summary judgment, cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." *Id.*

## ANALYSIS

"The anti-retaliation provision of FLSA provides that an employer is prohibited from 'discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted . . . any proceeding under [the FLSA.] 29 U.S.C. § 215(a)(3)." *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

The familiar *McDonnell Douglas* burden-shifting paradigm applies to FLSA retaliation

8

claims in situations like this, where the Plaintiff does not claim to have any direct evidence. *Id.*

"To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to [him or] her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Adair,* 452 F.3d at 489.

Defendant does not dispute that Plaintiff's termination constitutes an adverse action. But Defendant challenges Plaintiff's ability to establish all of the other elements. Defendant asserts that: 1) Plaintiff's verbal complaints do not constitute protected activity under the FLSA for several reasons; 2) Plaintiff cannot establish that the decision-makers who decided to terminate him had knowledge of those complaints, which is fatal to the claim; and 3) Plaintiff cannot establish a causal connection.[1]

The Court need not address all of those challenges, however, because it concludes that Plaintiff has failed to present either direct or circumstantial evidence that the decision-makers who decided to terminate his employment had knowledge of Plaintiff's verbal complaint made to others.

As Defendant notes in its motion, the "decisionmaker's knowledge of the protected activity is an *essential element* of the prima facie case of unlawful retaliation." *Frazier v. USF Holland, Inc*., 250 F. App'x 142, 148 (6th Cir. 2007) (emphasis added); *see also Evans v.*

---

[1]Defendant's motion also asserts that, even if Plaintiff could establish a prima facie case of FLSA retaliation, it would still be entitled to summary judgment because Nexteer had a legitimate, non-retaliatiory reason for terminating his employment and Plaintiff cannot establish pretext.

*Professional Transp., Inc.*, 614 F. App'x 297, 300-301 (6th Cir. 2015) (explaining that this element cannot be met by merely showing that the defendant had "general corporate knowledge" of the protected activity and that the plaintiff must present either direct or circumstantial evidence that the decision-maker had knowledge of the protected activity).

Defendant contends that Plaintiff cannot produce any evidence that the "individuals who made the decision to terminate Plaintiff's employment had any knowledge of Plaintiff's complaints about the 2016 comp time policy," and explains:

> Here, there is simply no evidence that the individuals who made the decision to terminate Mueller's employment had any knowledge of Mueller's complaints about the January 2016 comp time policy. It is undisputed that Mueller did not complain about that issue to anyone other than Bellinger, Weigl, and Dorr. (Mueller Dep. 53). It is also undisputed that Bellinger, Weigl, and Dorr were not involved in the decision to terminate Mueller's employment, and did not even know who made the decision. (Weigl Dep. 25; Dorr Dep. 15; Bellinger Dep. 19; see also Mueller Dep. 89-90). The record demonstrates that the decision to terminate Mueller's employment was made by Page, Jobson, Sherbino, Getgood, Koski, Pruitt, and Behrman, and that in making their decision, these individuals considered only the contend of the investigative report. (Page Dep. 20-21, 30-31.) The decisionmakers did not meet with any of Mueller's supervisor's or coworkers or discuss the report with them. (Page Dep. 30-31).
>
> In short, Mueller cannot establish a prima facie case of FLSA retaliation because Mueller has no evidence demonstrating that the decision-makers knew of his complaints regarding the January 2016 comp time policy. Because Mueller has not "produced evidence from which one could reasonably infer that [the decision-makers] knew of his protected activities," a reasonable jury cannot find retaliation on these facts, and summary judgment is proper. *Mulhall,* 287 F.3d at 554.

(Def.'s Br. at 15-16).

Plaintiff's response brief acknowledges this challenge, stating "Defendant argues that the decision-makers did not have knowledge of Plaintiff's complaints and, therefore, Plaintiff cannot establish notice. Defendant, however, does not proffer any evidence to establish that none of the decision-makers knew of Plaintiff's protected activity. As such, and in light of Plaintiff's

evidence that Defendant knew of his complaint, a genuine issue of material fact exists regarding the second element." (Pl.'s Br. at 14).

Defendant's Reply Brief notes that Plaintiff's response improperly seeks to reverse the burden of proof on this issue:

> [I]n making this argument, Mueller improperly seeks to place the burden on Nexteer. It is not Nexteer's obligation to show that the decision-makers had no knowledge; it is Mueller's burden to show that they did.

(Def.'s Reply Br. at 4) (citing *Evans, supra*).

The "decisionmaker's knowledge of the protected activity is an essential element of the prima facie case of unlawful retaliation." *Frazier, supra; Evans, supra.* A plaintiff can create a genuine issue of fact on this issue by presenting either direct or circumstantial evidence on this issue. Here, however, Plaintiff has offered neither. As such, Plaintiff cannot establish a prima facie case of retaliation and Defendant is entitled to summary judgment.[2]

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: November 14, 2017

---

[2]Given this ruling, this Court need not consider Defendant's other challenges to the prima facie case or its arguments concerning pretext.

UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jeremy Mueller,

     Plaintiff,

v.                            Case No. 16-13586

Nexteer Automotive Corp.,       Sean F. Cox
                                  United States District Court Judge

     Defendant.
_____/

PROOF OF SERVICE

     I hereby certify that a copy of the foregoing document was served upon counsel of record

on November 14, 2017, by electronic and/or ordinary mail.

                         s/Jennifer McCoy_____
                         Case Manager